IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CIARAN RORY O'CONNOR,<br><br>    Plaintiff,<br>v.<br><br>The Boeing Company,<br><br>    Defendant. | Case No.<br><br>**Jury Trial Demanded** |

### COMPLAINT

Plaintiff Ciaran Rory O'Connor, by and through his attorneys, brings this action against The Boeing Company and alleges the following as his Complaint:

### NATURE OF ACTION

1. This is an action for age discrimination in employment.

2. Defendant The Boeing Company (hereafter "Boeing") discriminated against Plaintiff on the basis of disability, by refusing to reasonably accommodate his disability, placing him on unpaid suspension, and ultimately terminating his employment.

3. This discrimination is in violation of title I and title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as the facts and events giving rise to Plaintiff's claims occurred in this judicial district.

1

6. O'Connor has fully complied with the procedural requirements of the ADA. He filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), received a right-to-sue letter from the EEOC, and is filing this lawsuit within ninety (90) days of receipt of the right-to-sue letter. A copy of Plaintiff's charge and the EEOC right-to-sue letter are attached hereto as Exhibit A.

## PARTIES

7. O'Connor Ciaran Rory O'Connor ("O'Connor" or "Plaintiff") is formerly a resident of Chicago in the State of Illinois.

8. O'Connor is currently a resident of Costa Mesa in the State of California.

9. O'Connor is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. 12101, *et seq*.

10. O'Connor was employed by Boeing from 2006 to November 18, 2011 as a Field Service Representative and Mission Commander/Flight Director.

11. Boeing is a Delaware corporation.

12. Boeing is the world's leading aerospace company and the largest manufacturer of commercial jetliners and military aircraft combined.

13. Boeing is headquartered in Chicago, Illinois.

14. Boeing is an employer subject to suit under the ADA because it employed more than twenty (20) employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## FACTUAL ALLEGATIONS

15. O'Connor was employed by Boeing beginning in 2001.

16. O'Connor served in the United States Army in Iraq from 2004 to 2005.

17. In October 13, 2004, while on active duty in Iraq, O'Connor was the victim of a roadside bomb.

18. O'Connor was employed by Boeing beginning in 2006 as a Field Service Representative and Mission Commander/Flight Director.

19. O'Connor's duties as Mission Commander included supervising reconnaissance, intelligence, surveillance, and target acquisition along with leveraging numerous collection platforms concurrently to operational and senior combatant commanders during highly sensitive contingency operations of national and international significance.

20. In this position, O'Connor went on repeated deployments to Iraq and other overseas combat conflicts to operate and maintain Scan Eagle Unmanned Aerial Vehicles ("UAV").

21. While deployed in Iraq and other locations overseas for Boeing, O'Connor was in combat zones where munitions were often exploding.

22. While overseas in these locations, O'Connor was a frequent target of indirect fire (mortars and rockets), which exploded in close proximity to him on frequent occasions.

23. O'Connor was also exposed to a high risk of roadside bombs and vehicle mounted suicide explosives.

24. While not deployed overseas, O'Connor's duties included, among others, engineering support, sales, demonstrations, training/instruction, logistics, site support, supplier management, planning for and fielding block upgrades and new products, and supporting multiple proposal efforts.

25. O'Connor also wrote, coordinated, and administered Initial and Field Acceptance Tests and Software Acceptance Tests.

26. O'Connor informed Boeing in 2009 that he needed to undergo extensive neurological testing as a result of his injury sustained in 2004.

27. In 2009 O'Connor was diagnosed with a Traumatic Brain Injury ("TBI") due to his exposure to the roadside bomb and the resulting concussion.

28. In 2009 O'Connor was diagnosed with Post Traumatic Stress Disorder ("PTSD").

29. O'Connor was counseled by his medical team to go to extremes to avoid further concussions.

30. Specifically, O'Connor was told to avoid blast overpressure (shockwaves resulting from the exploding of munitions) as he would be at greater risk from compounded injury relative to other people who had not been exposed to concussion and resultant TBIs in the past.

31. O'Connor made Boeing aware of these results and recommendations of his medical team.

32. In April 2009 O'Connor informed his supervisors, Mark Travis and Elton Stallmam, of his need to undergo extensive neurological testing due to his documented disability.

33. O'Connor also informed Travis that he could not be deployed to combat zones where he would run the risk of further injury that would worsen his TBI and PTSD.

34. At this time O'Connor requested a reasonable accommodation in the form of a work assignment that would allow him to stay within the United States.

35. An assignment in the United States would allow O'Connor to lessen the risk of a serious brain injury, to receive regular medical care, and to seek treatment for his TBI.

36. On or about April 8, 2010, after returning from a six (6) month deployment to Iraq, O'Connor discussed with Travis the need to attend to his medical issues at a Veteran's Administration ("VA") hospital.

37. O'Connor told Travis that he had put off seeking treatment due to Boeing's continued need to deploy O'Connor overseas.

38. At the request of Travis, O'Connor worked at supporting operations in 29 Palms, California from July 19, 2010 through August 11, 2010.

39. Following the assignment at 29 Palms O'Connor told Travis that he still needed testing and treatment for his TBI at the VA.

40. O'Connor told Travis that he could receive testing and treatment at any VA in the United States.

41. During this conversation in August, 2010, O'Connor told Travis that he had a TBI and PTSD and that he needed the reasonable accommodation of not being deployed overseas to combat areas.

42. Travis told O'Connor to return home and staffed the site with other Boeing employees.

43. Immediately following his August 2010 conversation with Travis, O'Connor stopped receiving paychecks from Boeing.

44. O'Connor's TBI substantially limits his life activities of, among others, sleeping and concentrating.

45. O'Connor's TBI is worsened, and the possibility of greater harm increases, when he is exposed to blast overpressure, as occurs in combat zones.

46. O'Connor is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §§ 12101(1) and 12131(2) because his TBI is a physical/mental impairment that substantially limits his major life activities and his neurological functions.

47. O'Connor is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §§ 12101(1) and 12131(2) because his PTSD is a mental impairment that substantially limits his major life activities and his neurological functions.

48. Despite these disabilities, O'Connor was able to perform many of the essential functions of his job on a level that met or exceeded Boeing's expectations.

49. After requesting a reasonable accommodation for his disability in August 2010, O'Connor was placed on an indefinite leave of absence by Boeing.

50. During this leave of absence O'Connor was not receiving any payments from Boeing.

51. During this leave of absence O'Connor was not able to work for a competitor of Boeing due to his employment agreement with Boeing.

52. During this leave of absence Boeing did not give O'Connor any work assignments.

53. On or about November 18, 2011, Boeing terminated O'Connor's employment.

6

54. Boeing failed to reasonably accommodate O'Connor's disability.

55. Boeing terminated O'Connor because of his disability.

## COUNT I
### Discrimination with Respect To Terms, Conditions, Benefits And Privileges Of Employment Based on Disability in Violation of the Title I of the Americans With Disabilities Act

56. O'Connor repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

57. Section 12112(a) of the ADA provides that: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

58. Section 12112(b)(5)(A) of the ADA provides that no covered employer shall discriminate against a qualified individual on the basis of disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

59. At all relevant times, Boeing has been a covered entity and employer within the meaning of § 12112(2) and § 12111(5) of the ADA.

60. At all relevant times, O'Connor has been a qualified individual and employee within the meaning of § 12111(8) and § 12112(4) of the ADA.

61. Under the ADA, Boeing was required to grant O'Connor reasonable

accommodation for his disability.

62. Boeing refused to grant Plaintiff a reasonable accommodation for his disability.

63. Boeing's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to O'Connor's federally protected rights.

64. O'Connor was damaged by Boeing's conduct.

WHEREFORE, Plaintiff, Ciaran Rory O'Connor requests the following relief:

- O'Connor be awarded back pay, including wages, salary, and fringe benefits;
- O'Connor be awarded front pay;
- The Court award injunctive relief in the form of ordering Boeing to reinstate O'Connor and stop any and all future discrimination;
- O'Connor be awarded compensatory damages for future loss, emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;
- O'Connor be awarded attorney's fees and costs;
- O'Connor be awarded punitive damages; and
- The Court grant such other and further relief as it may deem just or equitable.

## COUNT II
### Retaliation Based on Disability in Violation of the Title V of the Americans With Disabilities Act

65. O'Connor repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

66. Section 12203 of the ADA provides as follows: "Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

8

67. At all relevant times, Boeing has been a covered entity and employer within the meaning of § 12112(2) and § 12111(5) of the ADA.

68. At all relevant times, O'Connor has been a qualified individual and employee within the meaning of § 12111(8) and § 12112(4) of the ADA.

69. Boeing retaliated against O'Connor when it placed him on unpaid leave of absence after he requested a reasonable accommodation for his disability.

70. Boeing retaliated against O'Connor when it terminated his employment after he requested a reasonable accommodation for his disability.

71. Boeing's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to O'Connor's federally protected rights.

72. O'Connor was damaged by Boeing's conduct.

WHEREFORE, Plaintiff, Ciaran Rory O'Connor requests the following relief:

- O'Connor be awarded back pay, including wages, salary, and fringe benefits;
- O'Connor be awarded front pay;
- The Court award injunctive relief in the form of ordering Boeing to reinstate O'Connor and stop any and all future discrimination;
- O'Connor be awarded compensatory damages for future loss, emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;
- O'Connor be awarded attorney's fees and costs;
- O'Connor be awarded punitive damages; and
- The Court grant such other and further relief as it may deem just or equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues raised in this Complaint.

Respectfully submitted,

/s/ John R. Hayes

John R. Hayes
Attorney for Plaintiff


Matthew D. Lango (ARDC No. 6286673)
John R. Hayes (ARDC No. 6286365)
Hayes Lango LLP
4256 N. Ravenswood Ave., Suite 217
Chicago, IL 60613
Phone: (773) 868-9300
Email: lango@hayes-lango.com


Electronically filed on May 2, 2013